UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: <br> BROTHERS MATERIALS LTD., A <br> TEXAS LIMITED PARTNERSHIP, <br> Debtor <br><br> UNITED STATES OF AMERICA, <br><br>   Appellant <br> VS. <br><br> BROTHERS MATERIALS LTD., A <br> TEXAS LIMITED PARTNERSHIP <br><br>   Appellee | § § § § § § § § § § § § § § § | CIVIL ACTION NO. 5:17-CV-0020 |

## **MEMORANDUM AND ORDER**

This case is about finality. "The truth is incontrovertible. Malice may attack it, ignorance may deride it, but in the end, there it is." Winston Churchill.

Although the IRS seeks to collaterally attack the Bankruptcy Court's order confirming the Debtor's Chapter 11 Bankruptcy Plan, the incontrovertible truth of this case is that the IRS did not object to the Plan or directly appeal the confirmation order. Yet when the Debtor filed a motion to enforce an unambiguous Plan provision in the Bankruptcy Court, the IRS changed course, asserting for the first time the Court's alleged lack of jurisdiction to confirm the Plan. The Court agrees with the Bankruptcy Court's holding that the time to make such a challenge has long since passed and that its confirmation order was res judicata. The judgment of the Bankruptcy Court is hereby **AFFIRMED**.

## I. BACKGROUND

In 2014, Brothers Materials, Ltd. (the Debtor) filed for Chapter 11 bankruptcy. (Dkt. No. 2-12 at 3). Brothers Materials is owned by Ramon and Rogelio Soliz, both of whom owe federal income tax to the IRS. (Dkt. No. 2-9 at 1). Their tax liabilities are secured, in part, by a lien on a 10.8619 acre tract of land (the Property), which is jointly owned by the Soliz Brothers, not Brothers Materials. (*Id.*).

In an indirect effort to collect the Soliz Brothers' tax liabilities, the IRS actively participated in the Debtor's bankruptcy proceedings. It filed a proof of claim, responded to the Debtor's objections to its claim, and appeared at numerous hearings. (Dkt. Nos. 2-3 at 3; 2-6 at 7; 2-13; 2-15). In November 2015, the Debtor filed its First Amended Combined Plan and Disclosure Statement (the Plan). (Dkt. No. 2-6 at 14). The IRS received the Plan and the hearing date for the Plan's confirmation. (Dkt. Nos. 2-3 at 3; 2-9 at 1). It, however, declined to attend the hearing, and the Plan was confirmed without objection. (Dkt. Nos. 2-3 at 3–4; 2-9 at 1). The IRS did not appeal the confirmation order. (Dkt. No. 2-9 at 2).

The Plan explains that the Soliz Brothers will contribute the Property to the Plan but emphasizes that it is not itself a bankruptcy-estate asset. (Dkt. No. 2-10 at 8, 15). The Plan also states that the Property will be sold, and the proceeds will be used to first pay administrative expenses and then the Debtor's creditors, including the IRS:

> The Plan provides that the Debtor will sell all of its remaining assets as part of a plan of liquidation. Proceeds from the sale of the

2

> Debtor's assets, as well as property contributed to the plan by the Debtor's equity shareholders will be paid, after the payment of costs of administration (including professional fees and U.S. Trustee's fees), to the payment of allowed third party claims in the order of their priority until such funds are exhausted.
>
> . . . .
>
> The only amounts the Debtor will pay on the I.R.S. claim, will be any proceeds from the sale of equipment or personal property assets that are in excess of administrative expenses, and any amounts necessary to pay the Bank debt in full.
> The balance of the I.R.S. debt will be the subject of a settlement between the I.R.S. and the Soliz Brothers. The Soliz Brothers have agreed that the proceeds from the sale of the 10.8619 acres will be paid first to satisfy administrative expenses, then the Debtor's obligation to the bank, and then to pay the I.R.S. settlement.

(*Id.* at 7–8, 21).

In July 2016, the Debtor filed a motion to enforce the Plan, seeking to use approximately $69,000 from the anticipated sale of the Property to pay attorney's fees as a part of the administrative expenses. (Dkt. No. 2-7). The Bankruptcy Court granted the motion over the IRS's objection. (Dkt. No. 2-3). Relying on *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), the Court held that "the IRS is bound to the terms of the Plan because the IRS received notice, was afforded the opportunity to litigate the terms of the Plan, and chose not the utilize that opportunity to object nor appeal." (Dkt. No. 2-3 at 22). The IRS then asked the Bankruptcy Court to reconsider its opinion, but it declined. (Dkt. No. 2-5). This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's factual findings for clear error.

3

*In re San Patricio Cty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir. 2009). The Bankruptcy Court's rulings on legal questions, as well as mixed questions of fact and law, are reviewed de novo. *Id.* Whether the Bankruptcy Court has jurisdiction to hear a controversy is a legal conclusion reviewed de novo. *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999).

III. ANALYSIS

The thrust of the IRS's appeal is couched in jurisdictional terms. It argues that the Bankruptcy Court did not have subject-matter jurisdiction to enforce the Plan provisions allowing proceeds from the Property's sale to be used to pay administrative expenses before paying the IRS's claim. As a direct attack on the Bankruptcy Court's subject-matter jurisdiction to enforce the Plan, the IRS's argument must fail because the "Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).[1] In truth, the IRS must be arguing that the Plan cannot be enforced because the Bankruptcy Court exceeded its jurisdiction when it originally confirmed the Plan.

In the IRS's view, the Plan should not have been confirmed because the Bankruptcy Court lacked subject-matter jurisdiction over the Property, which is a

---

[1] *See also In re Baker*, 593 F. App'x 416, 417 (5th Cir. 2015) (per curiam) ("Bankruptcy courts find their source of jurisdiction in 28 U.S.C. §§ 157 and 1334. However, '[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, *other than for matters pertaining to the implementation or execution of the plan.*' 'This jurisdiction extends to matters that "impact compliance with or completion of the reorganization plan."' A bankruptcy court 'plainly ha[s] jurisdiction to interpret and enforce its own prior orders.'" (alteration in original) (footnotes omitted) (emphasis added)).

4

non-estate asset owned by non-debtors, or alternatively, because it lacked jurisdiction to strip away the IRS's secured interest in the Property. (Dkt. No. 5 at 12). The IRS, however, did not appeal the confirmation order on this ground (or any grounds for that matter) and allowed it to become final. (Dkt. No. 2-9 at 1–2). As a final judgment, it is res judicata, and the IRS has failed to explain why the Court should not give it the preclusive effect that confirmation orders are normally entitled to.

### A. The Nature of a Bankruptcy Case

The IRS believes that res judicata does not apply because it is not collaterally attacking the confirmation order. Rather, it asserts that subject-matter-jurisdiction arguments can be raised at any time in a civil action. (Dkt. No. 5 at 15). This point, while correct, is based on the underlying assumption that this appeal from the Bankruptcy Court's enforcement order is a part of the same civil action as the prior confirmation order. This assumption is false. Bankruptcy cases are unique in that they can involve several distinct civil actions and final judgments. Any order that "ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment." *In re Kitty Hawk, Inc.*, 204 F. App'x 341, 343 (5th Cir. 2006) (per curiam) (quoting *Orix Credit All., Inc. v. Heard Family Trucking, Inc.* (*In re Heard Family Trucking, Inc.*), 41 F.3d 1027, 1029 (5th Cir. 1995)). Orders confirming bankruptcy plans and orders enforcing those plans both constitute final judgments under this rule. *See Espinosa*, 559 U.S. at 269 (addressing a confirmation order); *Kitty Hawk*, 204 F. App'x at 343 (addressing an enforcement

5

order).

The IRS believes that it can highjack this enforcement proceeding to directly attack the Bankruptcy Court's original jurisdiction to confirm the Plan, but the IRS lost that ability when the time to appeal the Bankruptcy Court's confirmation order expired. That order marked the end of the confirmation proceeding. This appeal of the enforcement order is a separate controversy or civil action. Thus, the IRS's arguments directed at the validity of the confirmation order in this enforcement action are properly viewed as collateral attacks on that order.

**B. Res Judicata and Collateral Attack**

Absent a timely appeal, a confirmed plan is res judicata and cannot easily be undermined once it becomes final. 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. 2011). In two recent cases, the Supreme Court has reaffirmed this time-honored principle of bankruptcy law. First, in *Travelers Indemnity Co. v. Bailey*, Johns–Manville Corporation, the largest supplier of asbestos products in the United States, filed for bankruptcy in light of the overwhelming litigation against it for asbestos-related injuries. 557 U.S. 137, 140 (2009). As part of the reorganization plan, Travelers, one of Manville's insurers, agreed to contribute $80 million to the bankruptcy estate on the condition that the bankruptcy court would enjoin all persons from filing suit against Travelers for any policy claims related to Manville. *Id.* at 141–42. The bankruptcy court obliged Travelers and issued an insurance-settlement order granting the requested injunction in 1986, which was then incorporated into the court's order confirming Manville's reorganization plan. *Id.*

Both the insurance-settlement order and confirmation order (the 1986 Orders) were affirmed on appeal. *Id.* at 142.

Nonetheless, over ten years later several plaintiffs filed asbestos-related actions against Travelers. *Id.* On Travelers' request, the bankruptcy court enforced the 1986 injunction against the new group of plaintiffs. *Id.* at 143. On appeal, the Second Circuit held that the bankruptcy court could not enforce the 1986 Orders because the court did not originally have subject-matter jurisdiction to enter the injunction in 1986. *Id.* at 146–47. In other words, the Second Circuit believed that jurisdictional defects remain lethal to a confirmation order even after the order becomes final.

The Supreme Court reversed. In its view, the primary issue before it was whether the plaintiffs' claims fell within the scope of the 1986 confirmation order. *Id.* at 151. Finding that they did, the Court then quickly disposed of the jurisdictional issue because the "[b]ankruptcy [c]ourt plainly had jurisdiction to interpret and enforce its own prior orders." *Id.* No other analysis was required. The Court took issue with the Second Circuit's willingness to reevaluate the bankruptcy court's original exercise of jurisdiction in 1986. *Id.* That question, the Court said, would have been proper on direct review of the 1986 Orders, but once they became final, they were res judicata as to the parties. *Id.* at 152. The Court found that a confirmation order's preclusive effect is no less when "the attack is on the [b]ankruptcy [c]ourt's conformity with its subject-matter jurisdiction, for '[e]ven subject-matter jurisdiction . . . may not be attacked collaterally.'" *Id.* (quoting

7

*Kontrick v. Ryan*, 540 U.S. 443, 455 n.9 (2004)). So long as the parties were given an opportunity to challenge subject-matter jurisdiction on direct appeal, they "cannot challenge it now by resisting enforcement of the 1986 Orders." *Id.* at 153.

The Court recognized that this rule is not absolute and that in rare situations subject-matter jurisdiction can be collaterally attacked if an "action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." *Id.* at 153 n.6. The Court, however, did not think that the rare exception applied because *Bailey* did not involve a situation where, for example, the bankruptcy court exercised jurisdiction despite Congress having affirmatively removed it, conducted a criminal trial, or tried to resolve a custody dispute. *Id.* For the Court, the need for finality outweighed the possible lack of subject-matter jurisdiction.

The Court built upon *Bailey* one year later in *United Student Aid Funds., Inc. v. Espinosa*, 559 U.S. 260 (2010). There, a student-loan creditor sought to void a Chapter 13 plan years after it had been confirmed on the grounds that the bankruptcy court had not conducted the statutorily required undue-hardship analysis in an adversarial proceeding before discharging the student-loan debt. *Id.* at 266. On certiorari, the Court began by reaffirming *Bailey*, stating that a final bankruptcy order cannot normally be collaterally attacked in an enforcement action. *Id.* at 269. It then clarified the two limited exceptions to this rule. The first applies, as *Bailey* recognized, where a judgment is premised "on a certain type of jurisdictional error." *Id.* at 271. No ordinary jurisdictional error will suffice—it

must be one that shows a total want of jurisdiction or a clear usurpation of power. *Id.* The second involves "a violation of due process that deprives a party of notice or the opportunity to be heard." *Id.* Applying the above framework, the Court upheld the confirmation order because neither exception applied. *Id.* at 271–72.

Here, *Bailey* and *Espinosa* upend the IRS's position. In particular, the IRS is trying to do exactly what the Supreme Court rejected in *Bailey*—it is attempting to bootstrap a jurisdictional challenge to a confirmation order through an enforcement action. But just as in *Bailey*, the time for making such a challenge has come and gone, and just as in *Espinosa*, the IRS has not established any jurisdictional error or due-process violations that would undermine the Bankruptcy Court's confirmation order.

### *1. Jurisdictional Concerns*

The IRS seemingly does not understand the powerful effect *Bailey* and *Espinosa* have on its case, as it relegates to a single footnote any attempt at distinguishing *Espinosa*. (Dkt. No. 9 at 6 n.3). There, it argues that *Espinosa* does not apply because, unlike the creditor in *Espinosa*, it is challenging the Bankruptcy Court's jurisdiction "over a fully encumbered non-estate asset." (*Id.*). The IRS spends the remainder of its briefing advancing two arguments as to why the Bankruptcy Court originally lacked jurisdiction to confirm the plan. These two alleged jurisdictional errors, though, are not the rare and extreme type that will void a judgment on collateral attack under *Bailey* and *Espinosa*.

First, the IRS contends that bankruptcy courts do not have jurisdiction over

9

controversies between non-debtors, like the Soliz Brothers and the IRS, over a non-estate asset, such as the Property. (Dkt. No. 9 at 9). In support, the IRS cites to *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), and a litany of out-of-circuit cases.[2] While all of these cases support the above principle, they are inapposite because they do not involve collateral attacks on confirmed plans. For example, *Zale*, the only Fifth Circuit case cited by the IRS on this point, involved a *direct appeal* from a bankruptcy court's confirmation order. *Id.* at 749–51. Whether the result would have been the same in the collateral-attack context is a different question entirely.

*Bailey*, on the other hand, is an on-point, collateral-attack case. In *Bailey*, the Supreme Court reversed the Second Circuit for adopting the very argument that the IRS now promotes. There, just as here, the controversies in *Bailey* were between non-debtors—the insurance company and individual plaintiffs—over non-estate property—the plaintiffs' legal claims based on the insurance company's own misconduct, not the debtor's. 557 U.S. at 143. Still, the Court held that any inquiry into the bankruptcy court's original jurisdiction to confirm the plan based on the attenuated nature of the controversies was improper in the enforcement action. *Id.* at 147–54. This was contrary to the Second Circuit's analysis, which did reevaluate the bankruptcy court's original jurisdiction. *Id.* at 147. Thus, the Supreme Court implicitly held that the type of jurisdictional error that the IRS now complains of is

---

[2] The cases cited are: *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990); *In re Romar Int'l Ga., Inc.*, 198 B.R. 401 (Bankr. M.D. Ga. 1996); *In re Holland Indus. Inc.*, 103 B.R. 461 (Bankr. S.D.N.Y. 1989); *In re Dickenson Lines, Inc.*, 47 B.R. 653 (Bankr. D. Minn. 1985).

not the type of error that can undermine a confirmed plan's preclusive effect.[3]

Second and alternatively, the IRS argues that the Bankruptcy Court did not have jurisdiction to strip away its secured claim in the Property. (Dkt. No. 5 at 8–9, 15–16). The IRS relies on *In re Simmons*, 765 F.2d 547 (5th Cir. 1985), for this point. In *Simmons*, the Fifth Circuit recognized that orders confirming Chapter 13 plans are normally res judicata. *Id.* at 558. It realized, however, that this rule had the potential to interfere with the rights of secured creditors, who traditionally can remain outside of the bankruptcy proceeding and rely on their lien for satisfaction of their debts. *Id.* at 556; *see also In re Howard*, 972 F.2d 639, 641 (5th Cir. 1992) (relying on *Simmons* to hold that secured creditors may normally remain outside of bankruptcy proceedings). Thus, to protect creditors, the *Simmons* court held that a confirmed plan voiding a secured creditor's lien will not have preclusive effect on a creditor unless (1) the debtor objects to the creditors' proof of claim under 11 U.S.C. § 502, or (2) the lien is invalidated by some other provision of the Bankruptcy Code. *Simmons*, 765 F.3d at 556, 558; *see also Howard* 972 F.2d at 641 ("The general applicability of res judicata to bankruptcy plan confirmations must give way, however, to the interest of the secured creditor, as we recognized in *Simmons*, in being confident that its lien is secure unless a party in interest objects to it."); *In re Vitro Asset Corp.*, 539 B.R. 108, 116 (Bankr. N.D. Tex. 2015) (describing the two

---

[3] The Fifth Circuit has made explicit this implicit holding of *Bailey*. *See In re Chestnut*, 356 F. App'x 732, 736 (5th Cir. 2009) (concluding that litigants are precluded from challenging on collateral attack a bankruptcy court's jurisdiction to confirm a plan because the property involved was not a part of the estate and owned by a non-debtor).

11

circumstances under *Simmons* when a reorganization plan can void liens).

There are two problems with the IRS's reliance on *Simmons*. First, as this is a Chapter 11 case, there is a Code provision that arguably voids the IRS's lien. Under 11 U.S.C. § 1141(c), "the property dealt with by [a] plan is free and clear of all claims and interests of creditors . . . ." In applying this provision, the Fifth Circuit has held that four conditions must be met before a Chapter 11 plan can void a lien:

> (1) the plan must be confirmed; (2) the property that is subject to the lien must be dealt with by the plan; (3) the lien holder must participate in the reorganization; and (4) the plan must not preserve the lien.

*In re S. White Transp., Inc.*, 725 F.3d 494, 496 (5th Cir. 2013) (quoting *In re Ahern Enters., Inc.*, 507 F.3d 817, 822 (5th Cir. 2007)). All four requirements are met here.

Second, it is debatable if *Simmons*'s objection requirement is still valid in light of *Espinosa*. The *Simmons* court did not describe the requirement in jurisdictional terms. Rather, its focus on notice and fairness to the secured creditor highlights that its foundation is instead in the Due Process Clause. *See Howard*, 972 F.2d at 642 (holding that "[t]he key to *Simmons* is the requirement that a claim be objected to" so as "to put the creditor on notice that it must participate in the bankruptcy proceedings"). But *Simmons* goes well beyond the notice requirement that *Espinosa* held satisfied the Due Process Clause,[4] so its continued validity is questionable.

---

[4] *Espinosa*'s due-process requirements are set out in the next Section.

Thus, the alleged errors that the IRS points to are not the type of jurisdictional errors that would undermine the preclusive effect of a confirmation order. Indeed, the Court does not believe that they are errors at all. But even if they are jurisdictional errors, they do not show a clear usurpation of power or a manifest abuse of authority. This is not a case, for example, where the Bankruptcy Code affirmatively took jurisdiction away from the Bankruptcy Court or where the Bankruptcy Court conducted a criminal trial. *Cf. Bailey*, 557 U.S. at 153 n.6 (recognizing the extraordinary situations in which subject-matter jurisdiction may be subject to collateral attack).

### *1. Due Process Concerns*

Having dealt with the IRS's jurisdictional arguments, all that remains for the Court to consider is whether the IRS had adequate notice of the Plan and an opportunity to litigate the dispute. The answer is yes.

The Due Process Clause "requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Receiving "actual notice of the filing and contents of" a bankruptcy plan more than satisfies this standard. *Id.* Here, the Plan repeatedly references the Property and states that the administrative fees will be paid out of the Property first, with the remainder to go to the bank, and then finally to the IRS. (Dkt. No. 2-10 at 8, 13, 17, 21). The IRS received notice of the Debtor's bankruptcy proceeding, participated in

it by filing a proof of claim, responded to the Debtor's objections to its claim, received a copy of the Plan, and received notice of the Plan's confirmation hearing. (Dkt. Nos. 2-3 at 3; 2-6; 2-9; 2-15). In short, the IRS actively participated in the bankruptcy proceeding and was put on notice that the Plan could affect its interest in the Property. Under *Espinosa*, this is more than enough to satisfy any due-process concerns.

Despite proper notice, the IRS did not contest the plan or file an appeal. (Dkt. No. 2-9). What caused this inaction, the Court does not know. But what the Court does know is that the IRS cannot now turn back the clock and attempt to undue its oversight. The time to challenge jurisdiction has passed. In the interest of finality, and in keeping with *Bailey* and *Espinosa*, the IRS is now bound by the terms of the Plan.[5]

## IV. CONCLUSION

For the foregoing reasons, the judgement of the Bankruptcy Court is **AFFIRMED**.

It is so **ORDERED**.

**SIGNED** October 20, 2017.

Marina Garcia Marmolejo
United States District Judge

---

[5] The IRS also contends that the Bankruptcy Court erred in determining that Brothers Material is the alter ego of the Soliz Brothers. The Bankruptcy Court made this alter-ego determination in the context of discussing what would happen if the IRS was not bound by the Plan. In light of the Court's holding, the Court need not reach this issue to dispose of the IRS's appeal, and thus declines to answer.